In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3010

SPORTFUEL, INC.,

                          *Plaintiff-Appellant*,

*v.*

PEPSICO, INC. and
THE GATORADE COMPANY,

                          *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-7868 — **Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 9, 2019 — DECIDED AUGUST 2, 2019

Before KANNE, BARRETT, and BRENNAN, *Circuit Judges*.

KANNE, *Circuit Judge*. SportFuel appeals the district court's grant of summary judgment for Gatorade and its parent company, PepsiCo. SportFuel brought this suit against Gatorade alleging violations of its trademark after Gatorade rebranded itself with the slogan, "Gatorade The Sports Fuel Company." The district court deemed Gatorade's slogan a fair use protected by the Lanham Act. We affirm.

## I. Background

SportFuel is a Chicago-based sports nutrition and wellness consulting firm whose clients include several of Chicago's prominent professional sports teams and their athletes. The company provides personalized nutrition consulting services to professional and amateur athletes, but also sells SportFuel-branded dietary supplements. SportFuel holds two registered trademarks for "SportFuel." It registered the first for "food nutrition consultation, nutrition counseling, and providing information about dietary supplements and nutrition." After several years of use, SportFuel's trademark became "incontestable" in 2013 under 15 U.S.C. § 1065. SportFuel also registered a trademark in 2015 for "goods and services related to dietary supplements and sports drinks enhanced with vitamins."

Gatorade was created in 1965 at the University of Florida College of Medicine and public sales began several years later. Undoubtedly, Gatorade is more widely known. It is the official sports drink of the NBA, PGA, MLB, MLS, and many other professional and collegiate organizations. Whether by television imagery of victorious athletes drenching their coaches or teammates with a Gatorade shower from a distinctive cooler, or through aggressive national media marketing campaigns, Gatorade became a household name.

In addition to its traditional sports drinks, Gatorade now customizes its sports drink line by selling formulas that are tailored to the nutritional needs of individual professional athletes. The company also sells numerous other sports nutrition products beyond sports drinks. It began to publicly describe its products as sports fuels in 2013. Seeking to broaden its public image to reflect its expanded variety of products,

No. 18-3010 3

Gatorade began a rebranding effort. In 2016 it registered the trademark "Gatorade The Sports Fuel Company" with the United States Patent and Trademark Office ("PTO"). Notably, Gatorade disclaimed the exclusive use of "The Sports Fuel Company" after the PTO advised the company that the phrase was merely descriptive of its products.

The only link between SportFuel and Gatorade is a nutritionist and dietician named Julie Burns, who founded Sport-Fuel in 1993. Burns had a history of working with Gatorade: she served as a nutritionist on the Gatorade Sports Science Institute's Sports Nutrition Advisory Board from 1995 until 2003. Burns became aware of Gatorade's rebranding efforts and the alleged trademark infringement when she saw a Gatorade commercial featuring the new slogan. SportFuel filed suit against Gatorade and PepsiCo in August 2016. Its complaint alleged trademark infringement (15 U.S.C. § 1051), unfair competition, and false designation of origin in violation of the Lanham Act (15 U.S.C. § 1125(a)). Similarly, SportFuel asserted claims of trademark infringement and unfair competition in violation of Illinois law. *See* 815 Ill. Comp. Stat. §§ 505/1, 510/1. Gatorade raised counterclaims for a cancellation of SportFuel's trademark.

Gatorade moved to exclude SportFuel's expert's testimony and survey evidence concerning the likelihood of consumer confusion from Gatorade's use of the slogan. Gatorade also moved for summary judgment on two grounds. First, it argued that SportFuel failed to provide evidence that allowed a jury to find a likelihood of confusion—a necessary element to each of SportFuel's claims. Second, Gatorade argued that the Lanham Act protected its use of "Sports Fuel" as a fair use.

On June 14, 2018, the district court granted Gatorade's motion for summary judgment after finding that SportFuel failed to produce evidence that demonstrated a factual dispute on any of the three elements of Gatorade's fair use defense. The court also determined that because it found that Gatorade successfully raised the Act's fair use defense, it need not conduct a risk of confusion analysis for SportFuel's claims. Similarly, because the court determined that SportFuel's claims under Illinois law were subject to the same analysis as its federal claims, it did not separately consider those claims. SportFuel appeals.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*, viewing all facts in SportFuel's favor. *Georgia-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). A district court may award summary judgment when the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Trademark Act of 1946, commonly known as the Lanham Act, "federalized" the common law's trademark protections. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). The Lanham Act allows those who employ trade or service marks to register them for exclusive use in commerce. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). A trademark holder's right becomes "incontestable" five years after initial registration with the PTO if the holder meets certain conditions. *Id.*; 15 U.S.C. § 1065.

"The holder of a registered mark … has a civil action against anyone employing an imitation of it in commerce

No. 18-3010 5

when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *KP Permanent Make-Up*, 543 U.S. at 117 (quoting 15 U.S.C. § 1114(1)(a)). Additionally, the Act provides trademark-holders a cause of action against those who make a false designation of origin for a mark. 15 U.S.C. § 1125(a). "To prevail on either claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc.*, 267 F.3d at 673–74.

However, the Lanham Act provides several affirmative defenses to a plaintiff's claims, including the "fair use" defense. *See* 15 U.S.C. § 1115(b). The fair use defense is available against even incontestable trademarks, like SportFuel's. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). The defense allows individuals to use otherwise trademarked language in a descriptive sense. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058 (7th Cir. 1995). "[A] defendant in a trademark infringement action may invoke the fair use defense by demonstrating that the alleged infringement, 'is a use, otherwise than as a mark … which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.'" *Sorensen*, 792 F.3d at 722 (quoting 15 U.S.C. § 1115(b)(4)). In short, to raise the fair use defense successfully, Gatorade must show that (1) it did not use "Sports Fuel" as a trademark, (2) the use is descriptive of its goods, and (3) it used the mark fairly and in good faith. *Sorensen*, 792 F.3d at 722; *Packman*, 267 F.3d at 639. The district court determined that Gatorade met all three prongs.

On appeal, SportFuel challenges the district court's conclusions on all three prongs of the fair use defense. We review

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 6 of 18 PageID #:3850
Case: 18-3010    Document: 00713474100    Filed: 08/26/2019    Pages: 18

6                                                              No. 18-3010

each prong in turn. However, because we conclude that Gatorade successfully raised a fair use defense against SportFuel's claims, we do not consider whether Gatorade's use of the slogan presented a risk of confusion to SportFuel's mark.

   *A. Gatorade Did Not Use "Sports Fuel" As a Trademark.*

   SportFuel claims that the district court erred in finding that Gatorade did not use the term "Sports Fuel" as a trademark. SportFuel supports its argument with three factors: Gatorade uses the slogan as an "attention getting symbol," it placed a trademark indication after the slogan, and it sought to trademark the slogan.

   Words or phrases function as trademarks "when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *Sorensen*, 792 F.3d at 722–23 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992)). Product packaging can include more than one source indicator. *Sorensen*, 792 F.3d at 723. We look to multiple factors in how a defendant employs a challenged term or phrase to determine whether it serves as a source indicator and therefore is used as a trademark. Our decision in *Quaker Oats* is particularly helpful to illustrate this point.

   As here, *Quaker Oats* involved a suit over Gatorade's use of a slogan in an advertising campaign. 978 F.2d at 953–54. That campaign used the trademarked phrase "Thirst Aid" in

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 7 of 18 PageID #:3851
Case: 18-3010    Document: 00713474100    Filed: 08/26/2019    Pages: 18

No. 18-3010                                                                7

the slogan "Gatorade is THIRST AID."[1] *Id*. There, the district court determined that although Gatorade used its house mark in addition to the slogan, the term "Thirst Aid" also served as a source indicator. *Id*. at 953. The district court emphasized that Gatorade featured the term "Thirst Aid" prominently on its product packaging—even more prominently than the Gatorade house mark. Gatorade appealed summary judgment in the plaintiff's favor, arguing that it used the term "Thirst Aid" descriptively and not as a trademark. *Id*.

We affirmed and explained that although Gatorade used "Thirst Aid" in tandem with its house mark, it used the term as an "attention-getting symbol." *Id*. at 954. We observed that the "Gatorade is Thirst Aid" phrase employed a rhyming play-on-words and that Gatorade featured the slogan in larger, more noticeable font than the house mark. *Id*. We consequently determined that Gatorade's use of the slogan would likely lead consumers to associate the terms "Thirst Aid" and "Gatorade," and that such a use of "Thirst Aid" was meant to help consumers identify the source of the product. *Id*. These factors supported the district court's conclusion that Gatorade used the phrase as a trademark. *Id*.

In this case, however, the record does not support the notion that Gatorade used the term "Sports Fuel" as a source indicator. Because visuals help considerably in trademark cases, we include the following photographs included in the parties' briefs of Gatorade's use of the slogan:

---

[1] Although the full slogan declared, "Gatorade is THIRST AID for That Deep Down Body Thirst," Gatorade's advertisements and the ensuing litigation focused on the first portion. 978 F.2d at 950.







As in *Quaker Oats*, here Gatorade used the term "Sports Fuel" in conjunction with its house mark. But the similarities end there. The products' individual packaging and displays feature Gatorade's house mark and G Bolt logo more prominently. Gatorade rarely uses the term "Sports Fuel" directly on product packaging, except for where the company labeled a "Sports Fuel Drink" with the term. Instead, it primarily features the slogan on in-store displays and other advertisements—appearing almost as a subtitle to the house mark. Additionally, the "Sports Fuel" slogan lacks the catchy, rhyming play-on-words at issue in *Quaker Oats*. Nothing about Gatorade's use in this context suggests that consumers would view "Sports Fuel" as a source indicator.

SportFuel emphasizes that Gatorade employed a "TM" symbol with the slogan and obtained a trademark for the slogan. But these facts fail to support SportFuel's desired conclusion. The slogan notably included Gatorade's trademark-protected house mark. Additionally, Gatorade specifically disclaimed exclusive use of the phrase "The Sports Fuel Company" in its trademark application for "Gatorade The Sports Fuel Company." *Sunmark*, 64 F.3d at 1059 (noting that Ocean Spray disclaimed exclusive use of a contested, descriptive phrase). During the application process for Gatorade's slogan,

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 10 of 18 PageID #:3854
Case: 18-3010    Document: 00713474100    Filed: 08/26/2019    Pages: 18

10                                                              No. 18-3010

the PTO specifically advised Gatorade that it viewed the term "Sports Fuel" as descriptive and therefore inappropriate for trademark use. And as the district court pointed out, Gatorade's chief marketing officer stated in his deposition that he viewed the whole phrase—including the protected house mark—as a trademark.

Thus, even construing the record in SportFuel's favor on summary judgment, insufficient evidence supports SportFuel's claim. Accordingly, we do not believe the district court erred in determining that Gatorade never employed the term "Sports Fuel" as a trademark in its "Gatorade The Sports Fuel Company" slogan.

   B.  *Gatorade Used "Sports Fuel" Descriptively.*

The district court also found that Gatorade used "Sports Fuel" descriptively, rather than suggestively, and therefore not as a trademark. SportFuel maintains that the district court erred in this determination. We review the district court's classification *de novo*. *Quaker Oats*, 978 F.2d at 952. "Inherent distinctiveness is a question of fact, and summary judgment is appropriate only if, reading the record in [SportFuel's] favor, no reasonable factfinder could decide for it." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019).

Trademark law awards trademark protection to various categories of words, terms, and phrases if consumers rely on those marks to identify and distinguish one company's goods or services from those of others. *Platinum Home Mort. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). "Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Id*. Generally, trademark law does not

allow sellers to register marks for terms that are generic or descriptive of products or services. *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007). We previously explained that this rule prevents sellers from branding their product with a name or term that the public uses to identify the category of items. *Id*. An exception to this general rule is that "[d]escriptive terms … are protectable as a trademark if they have developed secondary meaning." *Sorensen*, 792 F.3d at 723. But a descriptive term only acquires a secondary meaning after most consumers think of the term as the name of the product instead of as descriptive of the product. *Packman*, 267 F.3d at 639.

Conversely, the law affords automatic protection to suggestive, arbitrary, and fanciful terms, which are inherently distinctive. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Platinum Home Mortg.*, 149 F.3d at 727. We recently noted that "[t]he line between descriptiveness and suggestiveness can be difficult to draw." *Uncommon*, 926 F.3d at 421.

"A mark is descriptive when 'it describes the product category to which the brand belongs.'" *Id.* (quoting *Custom Vehicles,* 476 F.3d at 483. Descriptive phrases refer to a characteristic of the product. *Quaker Oats*, 978 F.2d at 953. But they need not be common phrases. *Id*.

Suggestive marks, on the other hand, do not "directly and immediately describe an aspect of the goods," rather they "require[] an observer or listener to use imagination and perception to determine the nature of the goods." *Uncommon*, 926 F.3d at 421 (quotations omitted). However, just because a phrase is unfamiliar and "requires a hearer to think about its meaning" does not necessarily mean it is suggestive. *Quaker Oats*, 978 F.2d at 953. Courts look to a variety of factors to

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 12 of 18 PageID #:3856
Case: 18-3010     Document: 00713474100     Filed: 08/26/2019     Pages: 18

12                                                          No. 18-3010

distinguish between descriptive and suggestive terminology, but we find two factors particularly helpful in this instance.[2] "First, we can look to how, and how often, the relevant market uses the word [or phrase] in question." *Uncommon*, 926 F.3d at 421. Second, we employ the "imagination test," where we ask whether the word or phrase imparts information about the product or service directly or rather requires "some operation of the imagination to connect it with the goods." *Id.* at 422 (quoting *Platinum Home Mortg.*, 149 F.3d at 727). Both factors lead us to characterize the slogan here as descriptive.

First, producers of nutritional products for athletes regularly invoke the "Sports Fuel" terminology to describe the products they sell. Gatorade provided numerous examples of this widespread industry use to the district court, including, for example, Twin Laboratories' "SPORT FUEL" and Trident Sports' "SPORTS FUEL." Similarly, the PTO recognized this point when it processed Gatorade's trademark application stating, "[a]s SPORTS FUEL is commonly used in reference to sports nutrition, consumers encountering the wording THE SPORTS FUEL COMPANY in the proposed mark would readily understand it to mean that the goods are provided by a company that provides sports nutrition." This widespread industry use, coupled with Gatorade's disclaimer of exclusive use of "The Sports Fuel Company," supports Gatorade's argument it used "Sports Fuel" descriptively.

---

[2] Courts also occasionally find dictionary definitions and third-party patent registrations probative of whether a term or phrase is descriptive. *See Uncommon*, 926 F.3d at 422-23.

Second, SportFuel argues that Gatorade's use of "Sports Fuel" is suggestive—and not descriptive—of Gatorade's products because the term requires a mental leap to deduce that the company is really selling athletic nutrition products. To support this notion, SportFuel also points out that Gatorade's consumers, by and large, are not high-performance athletes. We find these arguments unpersuasive. The use of "Sports Fuel" in "Gatorade The Sports Fuel Company" clearly describes the category of goods that Gatorade produces. It requires no imaginative leap to understand that a company selling "Sports Fuel" is selling a variety of food products designed for athletes. That non-athletes regularly consume Gatorade's products has no bearing whether the term is descriptive. Just as the pervasive use of yoga pants and other activewear as casual clothing does not change the athletic characteristics of those products, the fact that Gatorade sells more sports drinks to average joes who limit their rigorous exercise to lawn mowing does not change the athletic characteristics of Gatorade's products.

We conclude that Gatorade's slogan uses "Sports Fuel" in a descriptive sense.

C. *Gatorade Uses "Sports Fuel" Fairly and in Good Faith.*

A party raising a fair use defense "must show that it used the plaintiff's mark fairly and in good faith." *Sorensen*, 792 F.3d at 725. Courts determine defendants' good faith by looking to their subjective purpose in using a slogan. *Packman*, 267 F.3d at 642. As an initial matter, we note that although the district court's analysis implicitly confirmed that Gatorade used "Sport Fuel" in good faith, it never stated its conclusion explicitly. Nonetheless, as we explain, we believe Gatorade produced sufficient evidence to show that it descriptively used

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 14 of 18 PageID #:3858
Case: 18-3010     Document: 00713474100     Filed: 08/26/2019     Pages: 18

14                                                          No. 18-3010

the term "Sports Fuel" in its slogan fairly and in good faith. SportFuel insisted during summary judgment that the evidence, construed in its favor, demonstrated that Gatorade acted unfairly and in bad faith by using its slogan. But the district court rejected SportFuel's argument and explained why SportFuel failed to show that Gatorade acted in bad faith.

On appeal, SportFuel challenges the district court's conclusion for three reasons. First, SportFuel claims that evidence produced during discovery justified inferring bad faith on Gatorade's part. Second, the district court purportedly erred in concluding that Gatorade used "Sports Fuel" fairly given the risk that reverse confusion posed to SportFuel. Third, Gatorade uses "Sports Fuel" in a trademark manner, *beyond* describing its goods or services.

1. *SportFuel Provides Insufficient Evidence of Gatorade's Bad Faith.*

SportFuel alleges that the district court erred because it never properly considered evidence of Gatorade's bad faith. It provides four main examples to support this argument. First, it argues that Gatorade was aware of SportFuel's mark by virtue of Gatorade's previous working relationship with Julie Burns. Second, it suggests that Gatorade's continued use of "Sports Fuel" after SportFuel filed suit betrays its bad faith. Third, SportFuel points to a dearth of evidence concerning Gatorade's adoption of its new slogan. Fourth, SportFuel alludes to a falling out between Gatorade and Burns, suggesting that Gatorade adopted the new slogan to settle an old score.

SportFuel alleges that Gatorade's bad faith is demonstrated by the fact that it began to use "Sports Fuel" even though it knew of SportFuel's mark. But the defendant's

No. 18-3010 15

"mere knowledge" of the plaintiff's mark, without other evidence of subjective bad faith, is insufficient. *Sorensen*, 792 F.3d at 725. Accordingly, "[t]o survive summary judgment, a plaintiff must point to something more that suggests subjective bad faith." *Id*. Therefore, without other, substantial evidence, this factor provides no support for the claim that Gatorade used "Sports Fuel" in bad faith.

SportFuel also points to Gatorade's continued use of "Sports Fuel," even after SportFuel filed this suit. But "it is lawful to use a mark that does not infringe some other; intentional infringement creates problems, but [a defendant's] intentional use of a mark that [it] had every right to use is not itself a ground on which to draw an adverse inference." *M-F-G Corp. v. EMRA Corp.*, 817 F.2d 410, 412 (7th Cir. 1987). Gatorade believed it had every right to use "Sports Fuel" in a descriptive sense, so its continued use after SportFuel filed suit also fails to justify an inference of bad faith.

Third, SportFuel suggests that Gatorade failed to produce evidence in discovery that must have existed. Specifically, Gatorade's production included no documentation related to its approval of the slogan "Gatorade The Sports Fuel Company." SportFuel argues that a company as large as Gatorade certainly required high-level approval before adopting a nationwide rebranding campaign. And presumably Gatorade would possess documentation of that approval. Yet, "[s]peculation will not suffice" to defeat summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."); *Gorbitz v. Corvilla*, Inc., 196 F.3d 879, 882 (7th Cir.1999). SportFuel's argument relies on the assumption that

something must have existed. But the time to pursue this idea was during discovery. SportFuel did not, and it cannot now avoid summary judgment with assumption or speculation. The record neither provides evidence to support the claim that Gatorade adopted the slogan in bad faith, nor indicates that Gatorade purposefully failed to produce such evidence.

Fourth, SportFuel suggests that Gatorade's adoption of the slogan relates to a falling out between Burns and Gatorade. The problem with this claim—much like the last argument—is that SportFuel provides no relevant evidence as support. It relies on Burns's deposition testimony, where she stated that her relationship with Gatorade ended after she refused to endorse one of Gatorade's new sugary sports bar products. However, Burns's relationship with Gatorade ended more than a decade before the alleged infringement began. And the idea that a new slogan for a nation-wide rebranding campaign and stale antipathy towards Burns are connected is facially incredible when otherwise unsupported by the record.

We accordingly find none of these factors significant enough—individually or in the aggregate—to create an inference of Gatorade's bad faith.

   2. *The Risk of Reverse Confusion Does Not Demonstrate Gatorade's Bad Faith.*

Second, SportFuel claims that the district court conducted an insufficient analysis of Gatorade's intent in using "Sports Fuel" because its alleged infringement creates reverse confusion. "Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 17 of 18 PageID #:3861
Case: 18-3010    Document: 00713474100    Filed: 08/26/2019    Pages: 18

No. 18-3010 17

not seek to profit from the good will associated with the senior user's mark." *Quaker Oats*, 978 F.2d at 957. We previously explained that reverse confusion nonetheless harms the senior user because "[t]he public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter." *Id.* (quoting *Ameritech, Inc. v. Am. Info. Tech. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)). As a result, "the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.* In this case, the alleged reverse confusion would occur when Gatorade used its house mark alongside the term "Sports Fuel," which would effectively coopt SportFuel's trademark and confuse consumers by leading them to believe the companies were related.

We cannot agree that the district court erred because it declined to examine Gatorade's intent in using "Sports Fuel." In *Quaker Oats*, we explained that intent is largely irrelevant in reverse confusion cases because "the defendant by definition is *not* palming off or otherwise attempting to create confusion as to the source of his product." *Id. at 961* (emphasis in original); *but see Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 937 (9th Cir. 2017) (applying the Ninth Circuit's test that analyzes intent).

But even if it were appropriate to examine Gatorade's intent in using "Sports Fuel" in its slogan, SportFuel's argument would fail. Gatorade provided evidence showing that it adopted the slogan to reflect its various types of sports fuel products. At the same time, SportFuel neither provides nor identifies substantive evidence to support the notion that Gatorade adopted its slogan in any spirit other than good faith.

Case: 1:16-cv-07868 Document #: 123 Filed: 08/26/19 Page 18 of 18 PageID #:3862
Case: 18-3010     Document: 00713474100     Filed: 08/26/2019     Pages: 18

18                                                          No. 18-3010

### 3. *Gatorade Uses "Sports Fuel" Descriptively.*

SportFuel lastly urges that Gatorade views the slogan as a trademark and therefore used "Sports Fuel" unfairly and in bad faith. As mentioned above, SportFuel supports this argument by pointing out that Gatorade adorns its slogan with a "TM." SportFuel also relies on testimony by Gatorade's chief marketing officer, in which he stated that he viewed the entire slogan, "Gatorade The Sports Fuel Company" as a trademark. For the reasons mentioned earlier in this opinion, we believe Gatorade employed the term "Sports Fuel" descriptively and not as a trademark. We therefore do not accept that Gatorade used the slogan unfairly or in bad faith.

Further, it is clear from the record that Gatorade provided sufficient evidence that it used the term "Sports Fuel" fairly and in good faith. Gatorade's stated purpose in adopting the challenged slogan was to help the company better describe its business and the products it sells. Nothing in the record actually contradicts this purpose. Gatorade produced evidence demonstrating that the company and its employees view themselves as producers of sports fuels. Moreover, Gatorade both specifically disclaimed exclusive use of the phrase "The Sports Fuel Company" and prominently used its house mark and G Bolt logo in a manner distinct from the slogan.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.